CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2022 DEC 16 P 1:31

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| [UNDER SEAL], | Civil Action No. |
| Plaintiff, | *QUI TAM* COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| [UNDER SEAL], | |
| Defendants. | |

*QUI TAM* COMPLAINT FOR
FALSE CLAIMS ACT VIOLATIONS
AND DEMAND FOR JURY TRIAL

# FILED *IN CAMERA* AND UNDER SEAL

# DO NOT FILE ON PACER

# DO NOT SERVE ANY DEFENDANTS

# DO NOT PLACE IN PRESS BOX

## <u>TABLE OF CONTENTS</u>

*Qui Tam* Complaint.................................................................................................... 1

   I.     Introduction.......................................................................................... 2

   II.    Jurisdiction and Venue......................................................................... 4

   III.   The Parties ........................................................................................... 5

       A.     Relator John Burke .................................................................. 5

       B.     Defendants ............................................................................... 6

          (1)    MJH Healthcare Holdings, LLC .................................... 6

          (2)    MJH Life Sciences, LLC ............................................... 6

          (3)    Intellisphere, LLC ......................................................... 7

          (4)    Clinical Care Targeted Communications Group, LLC ................ 7

          (5)    Managed Care & Healthcare Communications, LLC .................... 7

          (6)    Pharmacy & Healthcare Communications, LLC ........................... 8

          (7)    Cure Media Group, LLC ............................................... 8

          (8)    Cure Communications, LLC ......................................... 8

          (9)    MJH Associates, Inc. a/k/a Michael J. Hennessey and Associates, Inc. ................................................................. 9

          (10)   MultiMedia Healthcare Communications, LLC ........................... 9

          (11)   MJH Acquisitions, LLC ................................................ 9

          (12)   MJH Shared Services, LLC ........................................... 9

          (13)   MJH Studio, LLC........................................................ 10

          (14)   BDT Capital Partners, LLC ......................................... 10

   IV.   Applicable Law .................................................................................. 10

       A.     Relevant Postal Regulations .................................................. 10

       B.     False Claims Act .................................................................... 13

i

V.    Facts ............................................................................................................ 14

         A.    The MJH Defendants' Knowingly False Certifications to USPS ............ 14

         B.    Representative False Certifications............................................................ 16

         C.    BDT's Investment in MJH's Fraud........................................................... 20

         D.    MJH's PPP Loan Fraud ............................................................................ 21

    VI.    Counts ......................................................................................................... 22

Prayer for Relief.............................................................................................................. 24

Demand for Jury Trial..................................................................................................... 24

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* JOHN BURKE, | Civil Action No. |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | **FILED UNER SEAL** |
| MJH HEALTHCARE HOLDINGS, LLC, MJH LIFE SCIENCES, LLC, INTELLISPHERE, LLC, CLINICAL CARE TARGETED COMMUNICATIONS GROUP, LLC, MANAGED CARE & HEALTHCARE COMMUNICATIONS, LLC, PHARMACY & HEALTHCARE COMMUNICATIONS, LLC, CURE MEDIA GROUP, LLC, CURE COMMUNICATIONS, LLC, MJH ASSOCIATES, INC. a/k/a MICHAEL J. HENNESSEY AND ASSOCIATES, INC., MULTIMEDIA HEALTHCARE COMMUNICATIONS, LLC, MJH ACQUISITIONS, LLC, MJH SHARED SERVICES, LLC, MJH STUDIO, LLC, and BDT CAPITAL PARTNERS, LLC, | **FILED *IN CAMERA*** <br><br> **DO NOT PLACE ON PACER** <br><br> **DO NOT SERVE DEFENDANTS** <br><br> **DO NOT PLACE IN PRESS BOX** |
| Defendants. | |

## *QUI TAM* COMPLAINT

Relator John Burke brings this action on behalf of the United States of America under the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3730, against Defendants MJH Healthcare Holdings, LLC, MJH Life Sciences, LLC, Intellisphere, LLC, Clinical Care Targeted Communications Group, LLC, Managed Care & Healthcare Communications, LLC, Pharmacy & Healthcare Communications, LLC, Cure Media Group, LLC, Cure Communications, LLC, MJH

1

Associates, Inc. a/k/a Michael J. Hennessey and Associates, Inc., Multimedia Healthcare Communications, LLC, MJH Acquisitions, LLC, MJH Shared Services, LLC, MJH Studio, LLC, (collectively, "MJH Defendants") and BDT Capital Partners, LLC ("BDT"), and alleges the following:

## I.    INTRODUCTION

1.      This case involves fraud on the United States Postal Service ("USPS").

2.      USPS divides mail into different categories, called "classes."

3.      Each class of mail has different features, service levels, presort requirements, and postage prices.

4.      The Periodicals class of mail is designed for newspapers, magazines, and other periodical publications whose primary purpose is transmitting information to an established list of subscribers or requesters.

5.      Because Periodicals postage prices are generally less expensive than other classes of mail, there are specific eligibility standards for circulation, record keeping, and advertising limits that apply to the Periodicals class.

6.      For example, a Periodicals requester publication must have a legitimate list of persons who have requested the publication and 50% or more of the copies must be distributed to persons making such requests. This is often called the "50% rule."

7.      As an integrity measure, publishers who avail themselves to Periodicals postage prices must certify to USPS that they have satisfied the 50% rule and other Periodicals circulation standards. In other words, the publisher must certify its entitlement to Periodicals postage prices.

8.      Publishers certify their entitlement to Periodicals postage prices in at least two ways.

9.      First, for each circulation, the publisher must submit to USPS a Postage Statement (PS Form 3541).

10.     On the Postage Statement, the publisher certifies "that the mail and the supporting documentation comply with all postal standards and that the mailing qualifies for the prices and fees claimed."

11.     Second, for each requester publication, the publisher must submit to USPS an annual Statement of Ownership (PS Form 3526-R).

12.     On the Statement of Ownership, the publisher certifies "that 50% of all my distributed copies (electronic and print) are legitimate requests or paid copies."

13.     The MJH Defendants publish and circulate magazines targeted to the healthcare industry.

14.     Since at least 2017, the MJH Defendants have unlawfully avoided paying higher postage prices by submitting knowingly false Postage Statements and Statements of Ownership to USPS.

15.     The MJH Defendants knew that their circulations failed to satisfy the 50% rule. Yet they falsely certified their entitlement to Periodicals postage prices on Postage Statements and Statements of Ownership.

16.     The MJH Defendants violated the FCA, 31 U.S.C. § 3729(G), by knowingly and improperly avoiding higher postage prices.

17.     Worse yet, Defendant MJH Healthcare Holdings, LLC received a $10 million loan through the Paycheck Protection Program ("PPP") in April 2020.

18.     To qualify for the loan, MJH Healthcare Holdings, LLC falsely and expressly certified that it was not engaged in any activity that is illegal under federal, state, or local law.  But at that time, the MJH Defendants were committing fraud on USPS.

19.     MJH Healthcare Holdings, LLC violated the FCA, 31 U.S.C. § 3729(a)(1)(B), by making an express false certification material to its PPP loan application.

20.     Since acquiring a majority interest in MJH Life Sciences, LLC in 2021, BDT has failed to stop the MJH Defendants' postage fraud.

21.     BDT has instead knowingly fostered or deliberately ignored the MJH Defendants' fraud on USPS, making BDT jointly and severally liable for the FCA violations discussed herein.

## II.     JURISDICTION AND VENUE

22.     This action arises under the laws of the United States to redress violations of the FCA, 31 U.S.C. §§ 3729–3733.

23.     Subject-matter jurisdiction is conferred by 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1331, 1345.

24.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this claim occurred in this judicial district.

25.     The Court has personal jurisdiction over the Defendants because 31 U.S.C. § 3732(a) authorizes nationwide service of process.

26.     Defendants also have substantial contacts with this forum. For example, the MJH Defendants are headquartered in Cranbury, New Jersey. Defendants' false certifications to USPS and fraudulent mailings also originated in New Jersey.

27.     The specific facts, circumstances, and allegations of the Defendants' FCA violations have not been publicly disclosed in a civil suit, criminal suit, or administrative civil monetary penalty proceedings in which the United States is already a party.

28.     Relator is the "original source" of all the information on which this Complaint is based, as that phrase is used in the FCA.

29.     Relator has provided information of his allegations and has made voluntary disclosures to the United States before this Complaint was filed.

III.    **THE PARTIES**

A.    **Relator John Burke**

30.     Relator John Burke is an adult individual and United States citizen residing in Hamilton, New Jersey.

31.     Relator has been employed in the medical publication industry since 1988.

32.     Defendant Intellisphere, LLC employed Relator from 2007 until 2017 as the Group Director of Production, Circulation, and Audience Development.

33.     Defendant Intellisphere, LLC later evolved into, and remains part of, Defendant MJH Life Sciences, LLC.

34.     While employed at Defendant Intellisphere, LLC, Relator served as the Circulation Director for *Pharmacy Times* from 2008 until 2017.

35.     Relator also served as Defendant Intellisphere, LLC's Circulation Director for *CURE Magazine* from 2014 until 2017.

36.     As part of his duties at Defendant Intellisphere, LLC, Relator submitted an annual Statement of Ownership to USPS for each Periodicals class publication.

**B.    Defendants**

**(1)    MJH Healthcare Holdings, LLC**

37.    Defendant MJH Healthcare Holdings, LLC is a limited liability corporation headquartered at 2 Clarke Drive, Suite 100, Cranbury, New Jersey 08512.

38.    Defendant MJH Healthcare Holdings, LLC is the parent company and managing member of Defendant MJH Life Sciences, LLC.

39.    Defendant MJH Healthcare Holdings, LLC was the listed borrower on a PPP loan application to cover payroll expenses for its reported 500 employees. The Small Business Administration approved the $10 million loan (Loan No. 4270567105) on April 13, 2020.

40.    Michael J. Hennessy, Jr. is the President and CEO of Defendants MJH Healthcare Holdings, LLC and MJH Life Sciences, LLC.  He is also listed as the principal of Defendants MJH Healthcare Holdings, LLC, Intellisphere, LLC, Clinical Care Targeted Communications Group, LLC, Managed Care & Healthcare Communications, LLC, Pharmacy & Healthcare Communications, LLC, and MJH Associates, Inc.

**(2)    MJH Life Sciences, LLC**

41.    Defendant MJH Life Sciences, LLC is a limited liability corporation headquartered at 2 Clarke Drive, Suite 100, Cranbury, New Jersey 08512.

42.    Defendant MJH Life Sciences, LLC has several brands, each of which publishes and distributes industry-specific magazines.

43.    Defendant MJH Life Sciences, LLC is listed as the principal of Defendants Cure Media Group, LLC, Cure Communications, LLC and MJH Studio, LLC.

44.    Neil Glasser is Defendant MJH Life Sciences, LLC's CFO.

45.    Glasser co-signs BPA Reports, which are described more fully below, on behalf of Defendant MJH Life Sciences, LLC.

6

46.     Jonathan Severn is the Circulation Director at Defendant MJH Life Sciences, LLC.

47.     Severn certifies Statements of Ownership to USPS and BPA Reports.

**(3)     Intellisphere, LLC**

48.     Defendant Intellisphere, LLC is a publication holding company used to publish and distribute magazines.

49.     Defendant Intellisphere, LLC is headquartered at 2 Clarke Drive, Suite 100, Cranbury, New Jersey 08512.

50.     Defendant Intellisphere, LLC is affiliated with Defendant MJH Life Sciences, LLC.

**(4)     Clinical Care Targeted Communications Group, LLC**

51.     Defendant Clinical Care Targeted Communications Group, LLC is a publication holding company used to publish and distribute magazines.

52.     Clinical Care Targeted Communications Group, LLC is headquartered at 2 Clarke Drive, Suite 100, Cranbury, New Jersey 08512.

53.     Clinical Care Targeted Communications Group, LLC is affiliated with Defendant MJH Life Sciences, LLC.

**(5)     Managed Care & Healthcare Communications, LLC**

54.     Defendant Managed Care & Healthcare Communications, LLC is a publication holding company used to publish and distribute magazines.

55.     Managed Care & Healthcare Communications, LLC is headquartered at 2 Clarke Drive, Suite 100, Cranbury, New Jersey 08512.

56.     Managed Care & Healthcare Communications, LLC is affiliated with Defendant MJH Life Sciences, LLC.

**(6)    Pharmacy & Healthcare Communications, LLC**

57.    Defendant Pharmacy & Healthcare Communications, LLC is a publication holding company used to publish and distribute magazines.

58.    Pharmacy & Healthcare Communications, LLC is headquartered at 2 Clarke Drive, Suite 100, Cranbury, New Jersey 08512.

59.    Pharmacy & Healthcare Communications, LLC is affiliated with Defendant MJH Life Sciences, LLC.

**(7)    Cure Media Group, LLC**

60.    Defendant Cure Media Group, LLC is a publication holding company used to publish and distribute magazines.

61.    Cure Media Group, LLC is headquartered at 2 Clarke Drive, Suite 100, Cranbury, New Jersey 08512.

62.    Cure Media Group, LLC is affiliated with Defendant MJH Life Sciences, LLC.

63.    Cure Media Group, LLC is identified as the publisher and owner of *Cure Magazine* on the Statements of Ownership submitted to USPS.

**(8)    Cure Communications, LLC**

64.    Defendant Cure Communications, LLC is a publication holding company used to publish and distribute magazines.

65.    Cure Communications, LLC is headquartered at 2 Clarke Drive, Suite 100, Cranbury, New Jersey 08512.

66.    Cure Communications, LLC is affiliated with Defendant MJH Life Sciences, LLC.

67.    Cure Communications, LLC is identified as the publisher of *Cure Magazine* on BPA Reports.

### (9)     MJH Associates, Inc. a/k/a Michael J. Hennessey and Associates, Inc.

68.     Defendant MJH Associates, Inc. a/k/a Michael J. Hennessey and Associates, Inc. is a publication holding company used to publish and distribute magazines.

69.     MJH Associates, Inc. a/k/a Michael J. Hennessey and Associates, Inc. is headquartered at 2 Clarke Drive, Suite 100, Cranbury, New Jersey 08512.

70.     MJH Associates, Inc. a/k/a Michael J. Hennessey and Associates, Inc. is affiliated with Defendant MJH Life Sciences, LLC.

### (10)     MultiMedia Healthcare Communications, LLC

71.     Defendant MultiMedia Healthcare Communications, LLC is a publication holding company used to publish and distribute magazines.

72.     MultiMedia Healthcare Communications, LLC is headquartered at 2 Clarke Drive, Suite 100, Cranbury, New Jersey 08512.

73.     MultiMedia Healthcare Communications, LLC is affiliated with Defendant MJH Life Sciences, LLC.

### (11)     MJH Acquisitions, LLC

74.     Defendant MultiMedia Healthcare Communications, LLC is a publication holding company used to publish and distribute magazines.

75.     MultiMedia Healthcare Communications, LLC is headquartered at 2 Clarke Drive, Suite 100, Cranbury, New Jersey 08512.

76.     MultiMedia Healthcare Communications, LLC is affiliated with Defendant MJH Life Sciences, LLC.

### (12)     MJH Shared Services, LLC

77.     Defendant MJH Shared Services, LLC is a publication holding company used to publish and distribute magazines.

9

78.     MJH Shared Services, LLC is headquartered at 2 Clarke Drive, Suite 100, Cranbury, New Jersey 08512.

79.     MJH Shared Services, LLC is affiliated with Defendant MJH Life Sciences, LLC.

**(13)    MJH Studio, LLC**

80.     Defendant MJH Studio, LLC is a publication holding company used to publish and distribute magazines.

81.     MJH Studio, LLC is headquartered at 2 Clarke Drive, Suite 100, Cranbury, New Jersey 08512.

82.     MJH Studio, LLC is affiliated with Defendant MJH Life Sciences, LLC.

**(14)    BDT Capital Partners, LLC**

83.     Defendant BDT Capital Partners, LLC is headquartered at 401 Michigan Avenue, Suite 3100, Chicago, Illinois 60611.

84.     BDT Capital Partners, LLC is the private equity arm of BDT & Company, LLC.

85.     BDT Capital Partners, LLC purports to specialize in investments in family-owned and entrepreneurial businesses.

86.     In 2021, BDT Capital Partners acquired a majority interest in Defendant MJH Life Sciences, LLC for an undisclosed sum.

IV.    APPLICABLE LAW

A.     **Relevant Postal Regulations**

87.     The United States Postal Service ("USPS") is an independent agency of the Executive Branch of the federal government under 39 U.S.C. §§ 201, 501.

88.     USPS has the authority to adopt rules and regulations under 39 U.S.C. §§ 401, 503.

89.     The Mailing Standards of the United States Postal Service, Domestic Mail Manual ("DMM") contains the official prices and standards for all domestic mailing services.

90.     Each year, the revised DMM is incorporated into federal postal regulations at 39 C.F.R. § 111.1.

91.     The DMM prescribes the criteria that a publication must meet to be classified as a "periodical," and therefore qualify for a lower postage rate.  For example, "the primary purpose of the periodical must be the transmission of information."  DMM § 207.4.3.1.

92.     To qualify as a "requester publication," the publication must have "a legitimate list of persons who have requested the publication, and 50% or more of the copies must be distributed to persons who have made such requests."  DMM § 207.6.4.2(a). This is known as the 50% rule.

93.     Requests that are more than three years old do not count towards the 50% threshold. DMM § 207.6.4.2(e).

94.     The publisher must maintain its requester lists so that the USPS can verify each publication's eligibility for Periodicals postage prices. DMM §§ 207.6.4.2(d), 207.8.1.2(e), 207.8.2.1.

95.     Under the regulations, "[t]he mailer is responsible for proper payment of postage." See DMM §§ 102.1.3, 202.1.3.  The mailer must ensure that all information on postage statements is correct and that all copies qualify for the prices claimed.  DMM § 207.16.3.

96.     Every time a periodical is mailed, a mailer must submit a Postage Statement (PS Form 3541) for each issue of each publication.

97.     Each Postage Statement certifies that the information furnished is "accurate, truthful, and complete" and that "the mail and the supporting documentation comply with all postal standards and that the mailing qualifies for the prices and fees claimed."

98.     The Postage Statement certifies that the owner of the publication will be liable for any deficiencies assessed on the mailing and warns against potential criminal and civil penalties for furnishing false or misleading information.

99.     The regulations also require each owner of a publication with Periodicals mail privileges to publish information to determine whether the publication continues to qualify for the privilege.  The information is published on a Statement of Ownership (PS Form 3526-R) and must be filed by October 1 of each year.  DMM § 207.8.3.1.

100.    The information that must be published and provided to the Postal Service on a Statement of Ownership form includes: (1) the identity of the editor, publishers, and owners; (2) the extent and nature of the circulation of the publication, including the number of copies distributed, the methods of distribution; and, (3) the extent to which such circulation is paid in whole or in part.  39 U.S.C. § 3568.

101.    On each Statement of Ownership, the publisher must certify that "50% of all [] distributed copies (electronic and print) are legitimate requests."

102.    The publisher must also certify that the information provided is true and complete on each Statement of Ownership.

103.    Additionally, the publisher must acknowledge that "anyone who furnishes false or misleading information on [the] form or who omits material or information requested on the form may be subject to criminal sanctions (including fines and imprisonment) and/or civil sanctions (including civil penalties)." Failure to comply with this provision can lead to suspension or revocation of Periodicals mail privileges under 9 U.S.C. § 3568(c).

104.    Each Statement of Ownership for requester publications clarifies which types of requests constitute legitimate requested copies of publications, and which types of requests are

designated as non-requested copies. For example, direct written, telephonic, or internet requests from the recipient and requests from employers of recipients are legitimate requests. But "bulk sales and requests including association requests, names obtained from business directors, lists, and other sources" are designated as non-requested copies .

105.    Certifications and data on Statements of Ownership and Postage Statements are material to the amount of postage owed to USPS.

### B.    False Claims Act

106.    The False Claims Act ("FCA"), 31 U.S.C. §§ 3729–3733, allows private individuals with knowledge of fraud against the government to sue on behalf of the government, and to share in the government's recovery.

107.    The FCA imposes liability on any person who (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; or (C) conspires to commit an FCA violation. 31 U.S.C. § 3729(a)(1)(A)–(C).

108.    The FCA's "reverse false claim" provision, 31 U.S.C. § 3729(a)(1)(G), imposes liability on any person who "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government."

109.    The FCA defines the terms "knowing" and "knowingly" to mean (1) actual knowledge of information; (2) deliberate ignorance of the truth or falsity of information; or (3) reckless disregard of the truth or falsity of information. 31 U.S.C. § 3729(b)(1).

110.    The FCA requires no proof of specific intent to defraud. 31 U.S.C. § 3729(b)(1)(B).

111.    The FCA broadly defines a "claim" as "any request or demand . . . for money or property" that: "(i) is presented to an officer, employee, or agent of the United States," or "(ii) is

made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government . . . provides or has provided any portion of the money or property requested or demanded." 31 U.S.C. § 3729(b)(2).

112.    The FCA defines "obligation" as "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment." 31 U.S.C. § 3729(b)(3).

113.    Those who violate the FCA are liable for a civil penalty for each false claim submitted, plus three times the government's damages. 31 U.S.C. § 3729(a)(1).

## V.    FACTS

### A.    The MJH Defendants' Knowingly False Certifications to USPS

114.    BPA Worldwide is an organization that provides unbiased, third-party magazine audits and verified audience data critical to the buying and selling of advertising.

115.    BPA also ensures that a publication complies with government, industry, and organization standards.

116.    BPA audits are regarded as objective and reliable by the publishing industry.

117.    BPA is one of two independent audit bureaus that USPS authorizes to verify a publication's eligibility for Periodicals mailing privileges.

118.    BPA audited the MJH Defendants' publications twice a year.

119.    When auditing a publication, BPA scrutinized the MJH Defendants' internal list of requestors and supporting data.

120.    After an audit, BPA issued a "Brand Report" for the audited publication.

121.    The BPA Report showed the number of copies circulated based on a direct request and a request from a recipient's company.

122.    The USPS Statement of Ownership form (PS Form 3526-R) provides that both direct requests and requests from a recipient's company can be used to satisfy the 50% rule, thus qualifying the publisher for the lower Periodicals postage prices.

123.    The audited figures from BPA Reports should have aligned with the requester rates that the MJH Defendants certified to USPS in their Statements of Ownership.

124.    More specifically, the percent of distributed copies stemming from qualifying requests (direct requests or requests from a recipient's employer) listed in the BPA Report should have aligned with the percent of qualifying requests that the MJH Defendants reported and certified to the USPS on their Statements of Ownership.

125.    But in their certified Statements of Ownership to USPS, the MJH Defendants systematically inflated the number of persons who paid for or legitimately requested their magazines. In similar fashion, the MJH Defendants falsely certified their entitlement to Periodicals postage prices on Postage Statements submitted to the USPS.

126.    Simply put, the MJH Defendants knowingly misrepresented to USPS that their publications qualified for Periodicals postage prices under the 50% rule.

127.    As a result, the "Percent Paid and/or Requested Circulation" figures that the MJH Defendants certified to USPS on their Statements of Ownership were far greater than the audited figures listed in the corresponding BPA Report.

128.    The MJH Defendants swore that the BPA Reports were accurate, as shown below, so their incongruent Statements of Ownership and Postage Statements were knowingly false.

15

**B.      Representative False Certifications**

129.      Relator knew that after 2016, *Cure Magazine* would no longer qualify for Periodicals postage prices because many requests were about to "age out"—meaning, the requests would be more than three years old and thus invalid under the 50% rule. *See* DMM § 207.6.4.2(e).

130.      Based on this insider knowledge, Relator continued to track and compare *Cure Magazine's* BPA Reports and Statements of Ownership after he left Intellisphere, LLC.

131.      Relator discovered that the MJH Defendants' fraud on USPS was ongoing.

132.      As shown below, for 2018, 2020, and 2021, the MJH Defendants' Statements of Ownership for *Cure Magazine* and the corresponding BPA Reports reflected disparate figures for the Percent Paid and/or Requested Circulation.

| | | Reported Percent Paid and/or Requested Circulation (qualifying requests under 50% rule) | | |
|---|---|---|---|---|
| **Publication** | **Year** | **MHJ Statement of Ownership (false figure)** | **Corresponding BPA Report (audited figure)** | **Difference Between Figures** |
| Cure Magazine | 2018 | 66.65% | 25.10% | 41.55% |
| Cure Magazine | 2020 | 67.64% | 38.60% | 29.04% |
| Cure Magazine | 2021 | 77.52% | 27.80% | 49.72% |

133.      As shown above, the MJH Defendants certified to USPS that *Cure Magazine* exceeded the 50% threshold and thus qualified for Periodicals postage pricing. At the same, the BPA Reports showed that *Cure Magazine's* circulation fell far short of the 50% threshold.

134.      For example, on their 2020 Statement of Ownership for *Cure Magazine*, the MJH Defendants falsely certified to USPS that 67.64% of the publication's recipients had paid for or

requested a copy. Yet the BPA Report for the nearest timeframe stated that only 38.60% of *Cure Magazine's* recipients had paid for or requested a copy.

135.    Excerpts from the MJH Defendants' 2020 Statement of Ownership for *Cure Magazine* and the corresponding BPA Report are shown below for comparison.

### *Cure Magazine* – Statement of Ownership, September 30, 2020



*Cure Magazine* – BPA Report, June 2020,
Publisher's Affidavit, August 25, 2020



## BRAND REPORT
FOR THE 6 MONTH PERIOD ENDED JUNE 2020

No attempt has been made to rank the information contained in this report in order of importance,
since BPA Worldwide believes this is a judgment which must be made by the user of the report.

### 4. QUALIFICATION SOURCE BREAKOUT OF QUALIFIED CIRCULATION FOR ISSUE OF SPRING 2020

| Qualification Source | Total Qualified | Percent |
|---|---|---|
| I. Direct Request: | 110,243 | 38.6 |
| II. Request from recipient's company: | - | - |
| III. Membership Benefit: | - | - |
| IV. Communication from recipient or re-distributor (other than request): | 3,519 | 1.2 |
| V. **TOTAL** – Sources other than above: | 172,098 | 60.2 |
| Rosters and directories | - | - |
| Manufacturer's, distributor's and wholesaler's lists | - | - |
| *Other sources | 172,098 | 60.2 |
| VI. Single Copy Sales: | - | - |
| **TOTAL QUALIFIED CIRCULATION** | **285,860** | **100.0** |
| **PERCENT** | **100.0** | |

**PUBLISHER'S AFFIDAVIT**

We hereby make oath and say that all data set forth in this statement are true.

Jonathan Severn, Circulation Director

Neil Glasser, CFO

(At least one of the above signatures must be that of an officer of the publishing company or its authorized representative.)

**IMPORTANT NOTE:**
This unaudited brand report has been checked against the previous audit report.
It will be included in the annual audit made by BPA Worldwide.

| | |
|---|---|
| Date signed | August 25, 2020 |
| City | Cranbury |
| State | New Jersey |
| Received by BPA Worldwide | August 25, 2020 |
| Type | CBJ |
| ID Number | C780B0J0 |

**About BPA Worldwide**
A not-for-profit organization since 1931 and headquartered in Shelton, Connecticut, USA, BPA has a global membership, spanning more than 20 countries. The organization conducts 2,500+ audits for media brands in print, online/digital and live events. In addition, the BPA•Compli division verifies compliance to defined industry standards, provides technology assurance, and certifies organization's sustainability practices and reporting. BPA is supported by 4,000+ advertiser and agency members. The latest innovation to move the industry forward is the BPA Media Exchange, a brand-safe and audited cooperative marketplace which offers automated solutions for the buying and selling of digital advertising.

**PUBLISHER'S AFFIDAVIT**

We hereby make oath and say that all data set forth in this statement are true.

Jonathan Severn, Circulation Director

Neil Glasser, CFO

(At least one of the above signatures must be that of an officer of the publishing company or its authorized representative.)

**IMPORTANT NOTE:**
This unaudited brand report has been checked against the previous audit report.
It will be included in the annual audit made by BPA Worldwide.

136.    BPA based its audited figures on the MJH Defendants' own data. BPA also provided its audited figures to the MJH Defendants. In fact, BPA required the MJH Defendants to sign a "Publisher's Affidavit" swearing to the accuracy of the reported data.

137.    On that basis, the MJH Defendants submitted knowingly false Statements of Ownership and Postage Statements.

138.    For example, the above Publisher's Affidavit shows that on August 25, 2020, Jonathan Severn and Neil Glasser—MJH's Circulation Director and CFO—swore under oath that only 38.60% recipients had paid for or requested a copy of *Cure Magazine*.

139.    But on September 30, 2020, Severn certified to USPS that 67.64% recipients had paid for or requested a copy of *Cure Magazine*, as shown in the above Statement of Ownership.

140.    Indeed, within five weeks of swearing that only 38.60% of recipients had paid for or requested a copy of *Cure Magazine*, the MJH Defendants certified to USPS that the same figure was 67.64%.

141.    Upon information and belief, USPS is more likely to audit a publication that reports requester rates below 60%. For that reason, the MJH Defendants reported requester rates above 60% on their Statements of Ownership, even though the Periodicals privilege threshold is 50%.

142.    At any rate, these conflicting figures reveal that the MJH Defendants submitted knowingly false information and certifications on their Statements of Ownership and Postage Statements to avoid paying higher postage prices.

143.    The MJH Defendants could not qualify for Periodicals postage prices under the 50% rule without submitting knowingly false Statements of Ownership and Postage Statements to USPS.

144.    In other words, the false Statements were material to the amount of postage that the MJH Defendants owed to USPS.

145.    The above examples are representative of a larger, ongoing scheme.

19

146.     Upon information and belief, the MJH Defendants have fraudulently reduced their postage payments to USPS for other publications, including *Pharmacy Times, Oncology Live,* and *The American Journal of Managed Care*.

*147.*     The MJH Defendants publish the following magazines: *Cancer Network*, *Cure*, *OncLive*, *Oncology*, *Oncology Nursing News*, *Targeted Oncology*, *Aesthetic Authority*, *CGTlive*, *Contagion*, *Contemporary OB/GYN*, *Contemporary Pediatrics*, *Dermatology Times*, *Diagnostic Imaging*, *Endocrinology Network*, *Infection Control Today*, *Modern Retina*, *NeurologyLive*, *Ophthalmology Times Europe*, *Ophthalmology Times*, *Optometry Times*, *Practical Cardiology*, *Psychiatric Times*, *Rheumatology Network*, *Urology Times*, *Consultant Live*, *HCPLive*, *Medical Economics*, *Patient Care*, *Physician's Practice*, *Chief Healthcare Executive*, *Managed Healthcare Executive*, *The American Journal of Managed Care*, *The Center for Biosimilars*, *Drug Topics*, *Formulary Watch*, *Pharmacy Times*, *Total Pharmacy*, *Applied Clinical Trials*, *BioPharm International*, *Cannabis Patient Care*, *Cannabis Science and  Technology*, *LCGC*, *Nutritional Outlook*, *Pharmaceutical Executive*, *Pharmaceutical Technology*, *Spectroscopy*, *Turbomachinery International*, *Dental Lab Products*, *Dental Practice Management*, *Dental Products Report*, *Dentist's Money Digest*, *Modern Hygienist*, *Atlantic Coast Veterinary Conference*, *dvm360*, *Fetch dvm360*, *Firstline*, and *Vetted*.

**C.     BDT's Investment in MJH's Fraud**

148.     In 2021, BDT paid an undisclosed sum to acquire a majority interest in MJH Life Sciences, LLC.

149.     Like with any other private equity acquisition, BDT performed due diligence before, during, and after the buyout transaction.

150.    During that diligence, BDT would have analyzed MJH's circulation metrics because such metrics determine the cost of postage and drive advertising revenue.

151.    These circulation metrics are available from at least three sources—MJH's Statements of Ownership, Postage Statements, and the BPA Reports.

152.    It is reasonable to infer that BDT, an institutional investor, studied these sources and learned that MJH knowingly underpaid postage.

153.    Despite that knowledge, BDT provided MJH with substantial financial support and operational guidance.

154.    BDT has also maintained the same leadership at MJH since its acquisition.

155.    BDT has knowingly fostered or deliberately ignored MJH's fraud on USPS, making BDT jointly and severally liable.

**D.    MJH's PPP Loan Fraud**

156.    In April 2020, MJH Healthcare Holdings LLC received a $10 million loan from PNC Bank, National Association (Loan No. 4270567105), guaranteed by the Small Business Administration ("SBA") under the Paycheck Protection Program ("PPP"), a federal loan program created under the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, Tit. I § 1102g (2020).

157.    To qualify for the $10 million loan, MJH Healthcare Holdings LLC falsely certified that it was not engaged in illegal activity.

158.    But at that time, the MJH Defendants were committing fraud by submitting knowingly false Statements of Ownership and Postage Statements to USPS to avoid paying higher postage prices.

159.    In sum, MJH Healthcare Holdings LLC made a knowingly false certification in its loan application that was material to the company's eligibility to receive PPP funds.

**VI.    COUNTS**

### COUNT I (AGAINST ALL DEFENDANTS)
### VIOLATIONS OF THE FALSE CLAIMS ACT, 31 U.S.C. § 3729(a)(1)(G)

160.    Relator realleges all preceding paragraphs as though fully set forth herein.

161.    The MJH Defendants made and used false records and statements material to their obligation to pay adequate postage to USPS in violation of the FCA, 31 U.S.C. § 3729(a)(1)(G).

162.    BDT caused the MJH Defendants to make and use false records and statements material to their obligation to pay adequate postage to USPS in violation of the FCA, 31 U.S.C. § 3729(a)(1)(G).

163.    The false records or statements were the Statements of Ownership and Postage Statements which (i) misrepresented the distribution figures in order to unlawfully avoid paying higher postage rates, and (ii) contained certifications and representations of full compliance with applicable postal standards.

164.    The MJH Defendants violated the FCA, 31 U.S.C. § 3729(a)(1)(G), by knowingly and improperly avoiding an obligation to pay adequate postage to USPS.

165.    BDT violated the FCA, 31 U.S.C. § 3729(a)(1)(G), by causing the MJH Defendants to knowingly and improperly avoid an obligation to pay adequate postage to USPS.

166.    All of Defendants' conduct described in this Complaint was knowing, as that term is used in the FCA.

### COUNT II (AGAINST MJH HEALTHCARE HOLDINGS, LLC)
### VIOLATIONS OF THE FALSE CLAIMS ACT, 31 U.S.C. § 3729(a)(1)(B)

167.    Relator realleges all preceding paragraphs as though fully set forth herein.

168.    MJH Healthcare Holdings, LLC knowingly submitted a claim for payment to the SBA for $10,000,000 in PPP funds.

169.    MJH Healthcare Holdings, LLC violated the FCA, 31 U.S.C. § 3729(a)(1)(B), by making a knowingly false statement that was material to its claim for payment to the SBA.

170.    The false record was MJH Healthcare Holdings, LLC's PPP loan application, approved by the government on April 13, 2020.

171.    The false statement was MJH Healthcare Holdings, LLC's certification that the company was not engaged in any illegal activity.

172.    MJH Healthcare Holdings, LLC and its affiliates had been committing fraud on USPS since at least 2017.

173.    Having made an express false certification in its PPP loan application, MJH Healthcare Holdings LLC is liable to the United States under 31 U.S.C. § 3729(a)(1)(B).

### COUNT III (AGAINST ALL DEFENDANTS)
### VIOLATIONS OF THE FALSE CLAIMS ACT, 31 U.S.C. § 3729 (a)(1)(C)

174.    Relator realleges all preceding paragraphs as though fully set forth herein.

175.    Defendants, through their concerted efforts to carry out fraudulent schemes to knowingly and improperly decrease their obligation to pay proper postage to the USPS, conspired to defraud the federal government by submitting false or fraudulent Statements of Ownership, Postage Statements, and data material to postage prices.

176.    Defendants have therefore violated the False Claims Act, 31 U.S.C. § 3729(a)(1)(C).

## PRAYER FOR RELIEF

Relator requests the following relief:

A.  Judgment against Defendants for three times the amount of damages that the United States has sustained, plus the maximum civil penalty allowed by law for each violation of the False Claims Act;

B.  That Relator be awarded the maximum amount allowed under 31 U.S.C. § 3730(d);

C.  An award of attorney's fees, costs, and expenses; and,

D.  All other relief that the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Relator demands a trial by jury on all claims so triable under Rule 38 of the Federal Rules of Civil Procedure.

PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP

Jeremy E. Abay (NJ No. 083862013)
jea@pietragallo.com
Marc S. Raspanti (to apply *pro hac vice*)
msr@pietragallo.com
Pamela C. Brecht (to apply *pro hac vice*)
pcb@pietragallo.com
Ashley Kenny (to apply *pro hac vice*)
ak@pietragallo.com
Mary Kate McDevitt (NJ No. 384452021)
mkm@pietragallo.com
1818 Market Street, Suite 3402
Philadelphia, PA 19103
(215) 320-6200
(215) 754-5195 (fax)

*Attorneys for Relator John Burke*

Dated: December 16, 2022

24